UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| JENNY POBLANO and NATHAN BARTLETT, Individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RUSSELL CELLULAR, INC., a foreign Corporation<br><br>Defendant. | Case No: 8:19-cv-00265-MSS-AAS |

## JOINT *AMENDED* MOTION FOR APPROVAL OF SETTLEMENT

Plaintiffs, JENNY POBLANO AND NATHAN BARTLETT (the "Named Plaintiffs"), and Defendant, RUSSELL CELLULAR, INC. ("Defendant") file this Joint Motion for approval of Settlement, and request that the Court preliminarily approve the parties' Settlement Agreement and Release (the "Agreement"). In support of their Motion, the parties state as follows:

### I.   Introduction

To address the Court's concerns outlined in its June 10, 2021 Order, the Parties have amended their proposed settlement to eliminate any service awards, or reversion to the Defendant. Instead, the parties' agreement contemplates that the parties will stipulate to conditional certification for settlement purposes, and notice of the settlement will be sent to the Collective Members (as defined herein) advising them of their estimated share of the Net Fund (as defined herein) and how to claim it. Defendant will only issue payments to Collective Members who elect to participate. At the end of the claim period, Plaintiffs' counsel will file a motion for reasonable attorney's fees and costs (not to exceed the amount previously requested). Defendant will pay the

attorneys' fees, costs and payments to the Class Members who participate in the settlement once the Court rules on the motion for attorneys' fees. Any funds not claimed by Class Members, or attorney's fees not approved by the Court, will not be paid by the Defendant.

## II. Factual and Procedural Background

By way of background, this lawsuit was filed on January 31, 2019, by the Named Plaintiffs. Named Plaintiffs were employed by Defendant as salaried, exempt-classified Store Managers ("SMs") at Defendant's wireless stores.[1] In their Complaint, Named Plaintiffs alleged that notwithstanding their "manager" characterization, they and other similarly situated SMs were misclassified as exempt and were not paid for overtime hours for work in excess of forty (40) hours per workweek in violation of the FLSA. Thereafter, twenty-one (21) additional individuals opted into this case (collectively, "Opt-in Plaintiffs").

In its Answer, Defendant denied Named Plaintiffs' allegations, raised various defenses, and contended that SMs were properly classified as exempt under one (1) or more exemptions to the FLSA's overtime provisions, and properly compensated for all time worked. Specifically, Defendant asserted that Named Plaintiffs and other SMs were exempt under the administrative and/or executive exemptions, and were not required to be paid overtime compensation if they worked over forty (40) hours in a workweek. Defendant also contended that this case was not appropriate for conditional certification, including but not limited to some SMs having executed arbitration agreements which contained class action waivers. Therefore, Defendant maintained that even if this action was conditionally certified, those individuals would have to pursue their claims individually and would not be able to have their claims pursued in this action.

---

[1] Russell Cellular is an exclusive Verizon Authorized Retailer. https://www.russellcellular.com/store/about/ (last viewed November 20, 2019).

Both before and during the litigation, the parties and their counsel conducted a thorough investigation into the merits of their respective claims and defenses. Plaintiffs' Counsel conducted interviews, obtained statements, and reviewed thousands of pages of documents including time records, pay records and various Store Manager and Salesperson compensation plans. In its FLSA Scheduling Order, the Court ordered Plaintiffs to respond the Court's Interrogatories, after which Defendant would provide Plaintiffs' time and compensation records and the parties could meet and confer in person to work toward settlement. [D.E. # 6]. The parties also had the option to attend private mediation, and elected to do so. On May 1, 2019, the parties attended mediation in Tampa, Florida with mediator Shane Munoz, Esq., who is well versed in complex wage and hour cases. The parties did not resolve this case at mediation, but continued to discuss settlement as the litigation progressed.

On June 11, 2019, Plaintiffs filed their Motion for Conditional Certification [D.E. 37] in which they sought an order permitting Court-supervised notice to all salaried, exempt-classified SMs who worked for Russell Cellular at any location in the United States within the three (3) years preceding the filing of the Motion. Defendant filed a response opposing the Motion for Conditional Certification [D.E. # 58].

While the Motion for Conditional Certification was pending, Defendant served Offers of Judgment on the Opt-in Plaintiffs, and tendered checks to each Opt In Plaintiff in the amounts of the Offers of Judgment. All Opt In Plaintiffs have accepted the Offers of Judgment, and the only issue remaining is approval by the Court on the attorneys' fees and costs to Plaintiffs' Counsel associated with the Offers of Judgment, for which Plaintiffs will separately move within 14 days of this Court's approval of dissemination of Notice and Claim forms to the Class Members.

Ultimately, the parties reached a settlement, which is memorialized in the parties' Settlement Agreement, appended as Exhibit 1. The parties have stipulated, for settlement purposes, to conditional certification of an FLSA Collective comprised of approximately 217 SMs who were employed by Russell Cellular between January 31, 2016 and July 10, 2017 (the "Liability Period"), who supervised less than the equivalent of two (2) full time employees ("FTEs"). *See* [D.E. 106]; Settlement Agreement ¶ 3.1. Pursuant to the parties' Agreement, the Notice will be sent to the Collective Members allowing them the opportunity to opt-in to the settlement of this lawsuit, and claim their respective shares of a common fund created as part of the settlement of this lawsuit.[2]

The Agreement negotiated and achieved by the parties provides full and complete consideration and relief to the Collective Members of their back-pay and liquidated damages despite Defendant's defenses. Thus, even net of fees, costs, service awards and administration fees, the Collective Managers at issue will recover 100% of their alleged damages for being mis-classified as exempt[3] per their time records for weeks worked in any Russell Cellular store which was not sufficiently staffed with more than eighty (80) labor hours per week. The parties now seek Court approval of the Agreement.

### III. Summary of the Settlement Terms

### A. The Common Fund

The Agreement establishes a Common Fund which includes, subject to Court approval: (1) all settlement amounts to be paid to the Named Plaintiffs and the Collective Members; (2)

---

[2] After July 10, 2017, SMs who supervised less than 2 FTEs were reclassified to hourly, non-exempt employees. Therefore, there is no liability after July 10, 2017.
[3] The Net Fund from which the Collective Members will be paid is $$366,666.67, which is $143,169.81 more than the maximum damages calculated based on the Collective Members' time records ($223,496.86).

attorneys' fees approved by the Court for Plaintiffs' Counsel; (3) Plaintiffs' Counsel's costs, not to exceed Five Thousand Dollars ($5,000.00); (4) settlement administration costs incurred by Rust Consulting, Inc. in an amount not to exceed Twenty-Five Thousand Dollars ($25,000.00); and (5) the Collective Members' share of applicable federal, state, and local taxes required to be withheld by Defendant from payments to Collective Members. Russell Cellular's portion of payroll taxes will be paid in addition to the Common Fund. Russell Cellular will only pay out that which the Court approves, and there will be no reversion as only those who submit a claim form will receive payment, after which Plaintiffs' counsel will separately file a motion for fees and costs, and only the amounts awarded by the Court will be paid.

The parties have resolved the claims of the Named Plaintiffs, Opt-In Plaintiffs and the Collective Members without protracted litigation, and for more than 100% of the damages they were owed. Counsel for the parties calculated the total value of the Collective Members' claims for the Liability Period using the time clock records the Collective Members completed while they were employed. The time records reflected that the Collective Members were owed $111,748.43 in alleged overtime wages during the Liability Period. With liquidated damages, that amount doubled to $223,496.86. Defendant raised defenses to Plaintiffs' willfulness allegations arguing that SMs were the highest-ranking employees in the stores in which they worked, and were responsible for managing the stores as their primary duty, which is exempt work. Thus, proving willfulness would have been challenging for Plaintiffs, and could have limited any potential damages to a two-year period. Named Plaintiffs also faced many risks to obtain damages, including having to defeat Defendant's exemption defenses and prevail against Defendant's defense that it acted in good faith and therefore no liquidated damages should be awarded. Despite these disputes and risks, the settlement awards liquidated damages, and allows damages for

looking beyond the three (3) year statute of limitations. Therefore, Plaintiffs submit that the Common Fund amount is a fair resolution of these disputed claims.

B.  **Notice of Settlement to Collective Members**

The Notice of Collective Action Settlement is set forth in Exhibit A to the Agreement. Within twenty (20) days of the entry of an order granting preliminary approval of the settlement ("Approval Order"), Defendant will provide the Settlement Administrator a list containing all of the Collective Members' names, dates of employment as salaried, exempt-classified Store Managers in two (2) FTE stores, Last Known Addresses and e-mail addresses, and social security numbers (Class List"). Within twenty (20) days of the date the Settlement Administrator receives the Class List, the Settlement Administrator will disseminate the Settlement Notices to the Named Plaintiffs and Collective Members *via* First Class United States mail and electronic mail.

Collective Members will have sixty (60) days from the distribution of all Settlement Notices (the "Bar Date") to submit a completed Claim Form. Collective Members may submit their completed Claim Forms by mail, electronic or facsimile. Additionally, the settlement administrator will create a case website through which Collective Members may submit their Claim Forms. To ensure Collective Members receive their Settlement Notices, in the event that a Settlement Notice is returned because it is undeliverable without a forwarding address, the Settlement Administrator will perform up to two (2) skip traces for each such returned notice and, if an updated address is found, the Settlement Administrator will send the notice packet to the updated address and the Collective Member will have until the later of: (a) fifteen (15) days from any re-mailing of the Settlement Notice; and (b) the Bar Date. Additionally, thirty (30) days before the Bar Date, the Settlement Administrator will send reminder notice *via* United States Mail and

e-mail to all Collective Members who have not returned Claim Forms to remind them of the deadline to do so.

C.  **Collective Member Allocation Formula**

Each Collective Member's estimated proportionate share of the Net Fund will be determined by the Settlement Administrator based on the allocation formula in the Agreement, which is based on the number of workweeks each Collective Member was employed in a 2 FTE store during the Liability Period. Each Collective Member will receive the same amount for each work week worked as a salaried, exempt-classified SM and supervised less than the equivalent of two (2) full time employees during the Liability Period. The calculation of each Collective Member's Individual Settlement Amount shall be based on Defendant's business records.[4]

D.  **Releases**

Subject to final Court approval, by participating in the settlement, Participating Collective Members will waive, release, and forever discharge Defendant of all any and all overtime claims under the FLSA or any state wage laws, including related claims for penalties, interest, liquidated damages, attorneys' fees, costs and expenses that accrued during the time they were employed as salaried, exempt-classified Store Managers ("Released Claims").

E.  **Claims Administration**

The parties have retained Rust Consulting, Inc. to serve as the Settlement Administrator and to handle all aspects of the settlement administration including, among other things, preparing and disseminating the settlement notices via United States Mail, and electronic mail, creating and

---

[4] Although there are time records from which the hours each Collective Member worked (and the alleged damages based on those records) can be determined, the allocation formula will yield more damages to each Collective Member because the Net Fund is greater than the total amount of damages from the Collective Members' time records.

maintaining the case website, calculating the individual settlement amounts, attending to tax matters, processing the claim forms, issuing the settlement checks, and responding to inquiries from Collective Members.

**F.     Attorneys' Fees and Costs**

Within fourteen (14) days after the Bar Date, Plaintiffs' Counsel will file a Motion for Attorneys' Fees and Costs, in which Plaintiffs' Counsel will seek: (a) up to one third (1/3) of the Common Fund ($198,333.33) in attorneys' fees; and (b) reasonable costs and expenses from the Common Fund, not to exceed Five Thousand Dollars ($5,000.00).

**IV.    Argument**

**A.    Standards for FLSA Settlements**

The parties to an FLSA action can resolve the dispute and enter into a valid waiver of an employee's FLSA claims where: (i) the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor, or (ii) the parties present a proposed settlement to a district court which approves the fairness of the settlement. *See Lynn's Food Stores, Inc., v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). "In deciding whether a settlement is fair and reasonable, the court considers the following factors: '(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel.'"[5] *Trentman v. RWL Communs., Inc.*, No. 15 Civ. 89, 2015 U.S. Dist. LEXIS 113966, at *4 (M.D. Fla. Aug. 26, 2015).

---

[5] With regard to the first of the six (6) factors, there is no fraud or collusion here, and nothing in the record to even remotely suggest any taint to the settlement. The other five (5) factors are addressed and incorporated herein, *infra*.

An FLSA settlement may be approved as fair even where plaintiffs receive in settlement substantially less than the amount they originally claimed. *See Rutland v. Visiting Nurse Assoc. of Central Fla., Inc.*, No. 07 Civ. 1130, 2008 U.S. Dist. LEXIS 61776, at *3-4 (M.D. Fla. July 29, 2008). Discovery – including the production of records – as well as the risks associated with litigation and the viability of certain defenses, all may cause a plaintiff to settle for substantially less than the original amount claimed. *See id.* (approving FLSA settlement where Named Plaintiffs settled for approximately 6% of the wages she originally claimed) In addition, the dispute over the damages at issue in light of Defendant's affirmative defenses, liquidated damages, and the applicable statute of limitations may cause an FLSA plaintiff to accept substantially less in settlement than originally claimed. *See Ford v. Property Preservation Experts, Inc.*, No. 11 Civ. 1995, 2012 U.S. Dist. LEXIS 107194, at *6-10 (M.D. Fla. July 31, 2012) (approving FLSA settlement where one opt-in plaintiff settled for less than 3% of his original claimed back wages). In short, "[t]he Court should be mindful of the strong presumption in favor of finding a settlement is fair." *Id.* at *3 (internal citations omitted).

### B. This Settlement Represents a Fair and Reasonable Resolution of a *Bona Fide* Dispute

The settlement is fair because it is a reasonable resolution of a *bona fide* dispute regarding Collective Members' unpaid wages, reached *via* arms' length negotiation between adversarial parties and counsel over months of negotiations to reach resolution. This dispute was a vigorously contested litigation in which Defendant put forth significant evidence of several affirmative defenses, which may have presented barriers to Plaintiffs' success on the merits, making continued litigation expensive and lengthy, with no certainty of success on the merits. Nevertheless, Named Plaintiffs and the Collective Members are recovering 100% of the damages they were allegedly owed during the Liability Period.

***First***, Defendant argued that the Collective Members' primary duties were managerial in nature, and the Collective Members were exempt under the executive and/or administrative exemptions. While Named Plaintiffs argued that SMs' primary duties were non-exempt in nature, and included such duties as selling phones, stocking, helping customers, troubleshooting phones, cleaning, and cold calling potential customers, Defendant argued that the SMs' primary duty was managing the stores in which they worked, including duties such as hiring, firing, interviewing, and handling personnel matters. Given these disputes, Plaintiffs believe that it was likely that the primary duty issue would need to be resolved by a jury. Thus, given the competing evidence on the primary duty issue, Plaintiffs believe that the Collective Members faced significant risk in their ability to prevail in these claims at trial.

***Second***, Defendant contended that although Plaintiffs filed their Motion for Conditional Certification, Plaintiffs would not obtain conditional certification because SMs worked in different locations under different supervisors, performed different primary duties, and were paid under different compensation plans, among other reasons. Even if Plaintiffs obtained conditional certification, Defendant intended to seek decertification later because of the alleged differences between the duties and individualized circumstances of each Collective Member were substantial according to Defendant. If Defendant obtained decertification, then the Collective Members would all have to bring their claims on an individual basis in many courts throughout the country, making recovery of unpaid wages challenging, risky, costly, and very time-consuming. Notwithstanding all these risks, the parties reached a resolution that compensates Named Plaintiffs and the Collective Members for 100% of their alleged overtime and liquidated damages.

As discussed above, the Liability Period for the settlement is January 31, 2016 and July 10, 2017. While the Collective Members' claims would have expired pursuant to the FLSA's two (2)

(and in some cases, three)-year statute of limitations, the parties here negotiated a look back period that extended beyond the three (3) year statute of limitations to allow a larger number of SMs to benefit from the Agreement and receive a settlement award. Additionally, the Collective Members will recover 100% of their liquidated damages although the issue of good faith is also disputed.

Given these factors, the settlement represents a strong resolution of the disputed claims in this litigation, and the release is limited only to the misclassification period at issue, after which Defendant re-classified the store managers to non-exempt.

C. **The Proposed Settlement Notice Should Be Approved**

The Court should approve the proposed Settlement Notice attached as Exhibit A to the Agreement. The proposed Settlement Notice sufficiently informs each Collective Member of the Agreement's terms, the estimated amount they will receive, the basis for their estimated settlement payments, the scope of the release, and their right to object to the settlement.

**WHEREFORE**, the parties respectfully request this Court enter an Order: (a) preliminarily approving the Settlement Agreement; (b) permitting issuance of Notice to the Collective Members; and (c) granting any other further relief that this Court deems just and proper.

Dated: August 9, 2021
Respectfully submitted,

By: */s/ Camar R. Jones*
Gregg I. Shavitz, Esq.
Florida Bar Number 11398
Camar R. Jones, Esq.
Florida Bar Number 720291
Tamra C. Givens, Esq.
Florida Bar Number 657638
**SHAVITZ LAW GROUP, P.A.**
951 Yamato Road, Suite 285
Boca Raton, Florida 33431
T. (561)447-8888
F. (561)447-8831
gshavitz@shavitzlaw.com
tgivens@shavitzlaw.com
cjones@shavitzlaw.com
*Attorneys for Plaintiffs*

By: */s/ Brian Rubenstein*
Brian Rubenstein, Esq.
Florida Bar Number 016997
Eric Moody, Esq.
Florida Bar Number 0016997
**COLE, SCOTT & KISSANE, P.A.**
4301 W. Boy Scout Blvd., Suite 400
Tampa, FL 33607
T. (813) 864-9324
F. (813)286-2900
brian.rubenstein@csklegal.com
eric.moody@csklegal.com
*Attorneys for Defendant*