# SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into by and between JENNY POBLANO and NATHAN BARTLETT (the "Named Plaintiffs"), individually and on behalf of exempt-classified Store Managers (as further defined herein) employed by RUSSELL CELLULAR ("Russell Cellular" or the "Defendant", together with the Named Plaintiffs the "Parties").

## RECITALS

**WHEREAS**, the Named Plaintiffs have asserted overtime pay claims against Defendant under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*;

**WHEREAS**, the Named Plaintiffs were joined in this action by 21 Opt In Plaintiffs: Michelle Dean, Brittany Edrington, Daniel Farage, Chelseay Grimes, Kira Howerton, Gregory Jackman, Chad Parker, Lucus Ross, Ronicia Smith, Amanda Szakacsi, Jennipher Weston, Randy Knights, Vanessa Barnes, Bradford Corbitt, Nikki Gower, Rose Hall, Jomarie Jones, Emily Ping, Calbert Range, Jeremy Shaffer, and Tracy Watts-Martin;

**WHEREAS** Defendant served Offers of Judgement to the 21 Opt In Plaintiffs, which the Opt In Plaintiffs have accepted, thereby resolving their alleged claims for damages, with the remaining issue for those accepted Offers of Judgment being payment of reasonable attorneys' fees;

**WHEREAS**, the purpose of this Agreement is to settle: (a) all claims asserted by Named Plaintiffs and establish a common fund for a class of Store Managers (as defined below); and (b) all claims for attorneys' fees associated with the Offers of Judgment the Opt In Plaintiffs accepted; and

**WHEREAS**, Plaintiffs' Counsel (defined below) analyzed and evaluated the merits of the claims made against Defendant, conducted interviews with Named Plaintiffs and others, obtained and reviewed documents relating to Defendant's compensation policies and practices, the manner in which Russell Cellular operates its stores, researched law relating to the overtime claims, potential defenses and exemptions, and the various methods for calculating damages, and analyzed workforce data, and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the possibility that, if not settled now, the claims might not result in any recovery or might result in a recovery less favorable, and that any recovery would not occur for several years, Plaintiffs' Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Plaintiffs,

**NOW, THEREFORE**, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the asserted claims on the following terms and conditions.

1. **DEFINITIONS**

    The defined terms set forth in this Agreement have the meanings ascribed to them below.

    1.1 **"Agreement"** means this agreement and the exhibits hereto, which the Parties understand and agree set forth all material terms and conditions of the Settlement between them, and which is subject to Court approval.

    1.2 **"Claim Form"** means the document entitled Consent to Join, and Claim Form & Release to be approved by the Court in a form substantially similar to **Exhibit C** attached hereto. As set forth below, a Class Member must submit a Claim Form in conformity with this Agreement in order to become a "Participating Class Member" and be entitled to his or her Individual Settlement Check.

    1.3 **"Class Member(s)", "Store Manager(s)" or "SM(s)"** means the approximately 217 individuals who worked for Russell Cellular as salaried, exempt-classified, Store Managers between January 31, 2016 and July 10, 2017, who supervised less than the equivalent of 2 full time employees ("FTEs").

    1.4 **"Class Period"** means January 31, 2016 and July 10, 2017.

    1.5 **"Common Fund"** means the common fund of Five Hundred Ninety Five Thousand Dollars ($595,000.00), which is the maximum potential amount to be paid to fully resolve and settle Class Members' wage claims, including any claim for attorneys' fees and costs approved by the Court; any and all amounts to be paid to Class Members; and the cost of settlement administration.

    1.6 **"Court"** means the United States District Court for the Middle District of Florida.

    1.7 **"Defendant" or "Russell Cellular"** means Russell Cellular, Inc.

    1.8 **"Defendant's Counsel"** means Brian Rubenstein, Esq., and Eric Moody, Esq. of Cole Scott & Kissane, P.A., 4301 W. Boy Scout Blvd., Suite 400, Tampa, Florida 33607.

    1.9 **"Employer Payroll Taxes"** means all taxes and withholdings an employer is required to make for Participating Class Members arising out of or based upon the payment of employment/wage compensation resulting from this settlement, including FICA, FUTA, and SUTA obligations.

    1.10 **"Approval Order"** means an order by the Court granting approval of the Settlement.

    1.11 **"Individual Settlement Amount"** means each Class Member's proportionate share of the Net Fund calculated in accordance with this Agreement.

    1.12 **"Individual Settlement Check"** means the check issued to each Participating Class Member for his or her proportionate share of the Net Fund calculated in accordance with this Agreement.

1.13 **"Last Known Address"** means the most recently recorded personal mailing address for a Class Member as shown in Defendant's records.

1.14 **"Litigation"** or the **"Lawsuit"** or the **"Action"** means the lawsuit *Poblano v. Russell Cellular, Inc.*, No. 8:19-cv-00265, pending in the United States District for the Middle District of Florida.

1.15 **"Plaintiffs' Counsel"** means Gregg I. Shavitz, Esq., Tamra Givens, Esq. and Camar R. Jones, Esq., Shavitz Law Group, P.A., 951 Yamato Road, Suite 285, Boca Raton, Florida 33431.

1.16 **"Motion for Settlement Approval"** means Plaintiffs' Motion requesting an Order approving the terms and conditions of this Agreement, and authorizing distribution of the payment called for hereunder.

1.17 **"Net Fund"** equals $366,666.67.[1]

1.18 **"Opt In Plaintiffs"** means Michelle Dean, Brittany Edrington, Daniel Farage, Chelseay Grimes, Kira Howerton, Gregory Jackman, Chad Parker, Lucus Ross, Ronicia Smith, Amanda Szakacsi, Jennipher Weston, Randy Knights, Vanessa Barnes, Bradford Corbitt, Nikki Gower, Rose Hall, Jomarie Jones, Emily Ping, Calbert Range, Jeremy Shaffer, and Tracy Watts-Martin.

1.19 **"Qualified Settlement Fund"** or **"QSF"** means the account established by the Settlement Administrator to receive and pay the amounts owed under this Agreement from the Common Fund. The QSF will be controlled by the Settlement Administrator subject to the terms of this Agreement and the Court's order(s). Interest, if any, earned on any monies in the QSF will not become part of the Net Fund, and will revert to Russell Cellular.

1.20 **"Releasees"** means Defendant and its past, present, and future owners, officers, directors, employees, agents, partners, representatives, insurers, successors, and predecessors.

1.21 **"Settlement"** means the resolution of Plaintiffs claims or potential claims against Defendant.

1.22 **"Settlement Administrator"** means Administrator mutually agreed to by the parties..

---

[1] This amount was determined by deducting from the Common Fund payments for: (1) Settlement Administrator's Costs not to exceed $25,000.00; (2) maximum potential Court-approved attorneys' fees for Plaintiffs' Counsel related to Participating Class Members in the settlement ($198,333.33); and (c) Plaintiffs' Counsel's costs and expenses, not to exceed Five $5,000.00. The Net Fund amount shall not be impacted by the amount ultimately awarded for Plaintiff's attorneys' fees, as the Net Fund will remain equal to $366,666.67, even if the Court decides to award less than the maximum amount requested by Plaintiffs' Counsel for their attorney's fees.

1.23    "**Settlement Notice**" means the document entitled Notice of Russell Cellular, Inc. Store Manager Overtime Settlement to be approved by the Court in a form substantially similar to **Exhibit B** attached hereto.

2. **ATTORNEYS' FEES ASSOCIATED WITH OFFERS OF JUDGMENT**

2.1    Defendant served Offers of Judgment to 21 Opt In Plaintiffs totaling One Hundred Eighteen Thousand Seven Hundred Sixty Eight and 18/100 Dollars ($118,768.18) (exclusive of attorneys' fees and costs). The Opt In Plaintiffs accepted the Offers of Judgment resolving their claims for damages, which Defendant has already paid totaling $118,768.18, and the Parties agreed to $73,500.00 in reasonable attorney's fees and costs associated with these Opt In Plaintiffs' claims.

3. **APPROVAL OF COMMON FUND SETTLEMENT AND NOTICE TO CLASS MEMBERS**

3.1    For purposes of settlement only, the Parties agree to collective action conditional certification pursuant to 29 U.S.C. § 216(b) to include all Class Members.

3.2    The Settlement Administrator, must be mutually agreed to by counsel for all parties, and will be responsible for establishing a QSF account; preparing and mailing the Settlement Notice to Class Members; creating and maintaining a case website and email inbox to permit online submission of Claim Forms and said case website must first be approved by counsel for all parties and by Russell Cellular before it is posted online; calculating the Individual Settlement Amounts for each Class Member; preparing and mailing Individual Settlement Checks to Participating Class Members; calculating and paying all appropriate taxes and complying with all applicable tax reporting obligations, including preparing and filing all applicable tax forms; receiving and retaining copies of the Claim Forms and Individual Settlement Checks signed by Participating Class Members; providing a copy of all submitted Claim Forms to Defendant's and Plaintiffs' Counsel; and providing regular status reports to counsel for the Parties.

3.3    On or before August 9, 2021, the parties will file a joint Motion for Settlement Approval. With the Motion for Settlement Approval, Plaintiffs' Counsel also will file this Agreement and the attached Approval Order and Settlement Notice and Claim Form, attached hereto as Exhibits A, B, and C, respectively. Among other things, the Motion for Settlement Approval will ask the Court to an Approval Order: (i) conditionally certifying the Class Members; (ii) approving the Settlement as fair, adequate, and reasonable, (iii) approving the proposed Settlement Notice to be sent to Class Members, and (iv) approving up to $25,000 in claims administration fees to be paid by Defendant to claims administrator.

3.4    Within thirty (30) days after the Court issues the Approval Order, Defendant shall provide the Settlement Administrator a list, in electronic form, of all Class Members' names, dates of employment as salaried, exempt-classified Store Managers in 2 FTE stores, Last Known Addresses, and social security numbers (Class List").

3.5 Settlement Notices will be sent to Class Members *via* First Class United States mail and electronic mail by the Settlement Administrator within twenty (20) days after the Settlement Administrator receives the data. The Settlement Notices will advise the Class Members of their estimated Individual Settlement Amounts and how to claim the funds. The Settlement Administrator will also create a case website through which Class Members may submit their Claim Forms. The website will "go live" on the same date Settlement Notices are mailed and must first be approved by counsel for all Parties and Russell Cellular before the website is posted online in any manner.

3.6 The Settlement Administrator shall take the following reasonable steps to obtain the correct address for any Class Member for whom the Settlement Notice is returned by the post office as undeliverable: (1) conduct up to two (2) a "skip traces" to obtain better address information for the Class Member (and mailing a Settlement Notice to any such additional address); and (2) mailing a Settlement Notice to any forwarding address included in the return of an undeliverable mailing.

3.7 Class Members shall have sixty (60) days from the date of mailing of the Settlement Notice to submit a completed Claim Form. For Class Members whose notice is re-mailed pursuant to Paragraph 3.6, such Class Members shall have until the later of: (1) fifteen (15) days from any re-mailing of the Settlement Notice; and (2) sixty (60) days from the date of the initial Settlement Notice mailing. Class Members may submit Claims Forms by mail, facsimile, e-mail or online submission on the case website.

3.8 Thirty (30) days before the close of the sixty (60) day period to submit a Claim Form (the "Bar Date"), the Settlement Administrator shall send a postcard reminder *via* First Class United States mail, postage prepaid, reminding Class Members of their eligibility to participate in the Settlement by signing and returning the previously mailed Claim Form. The Settlement Administrator will also send the reminder to the Class Members *via* Electronic Mail on the same date that the First Class United States mail reminder is sent.

3.9 The Settlement Administrator will periodically update Plaintiffs' Counsel and Defendant's Counsel regarding returned mailings for which it is unable to obtain corrected addresses. Within seven (7) days after the Bar Date passes, the Settlement Administrator will prepare a list of all Class Members who submitted Claim Forms and provide that list to Defendant's counsel. As set forth above, the Settlement Administrator will also provide all completed Claim Forms by such Participating Class Members to Plaintiffs' counsel, so that Plaintiffs' counsel can file same with the Court after the deadline to submit a Claim Form (the "Bar Date") has passed.

## 4. APPROVAL OF ATTORNEYS' FEES AND COSTS

### 4.1 Motion for Attorneys' Fees and Costs

Within fourteen (14) days after the Bar Date, Plaintiffs' Counsel shall file a Motion for Attorneys' Fees and Costs relating to the Common Fund ("Motion for Attorneys' Fees") in which they will seek up to a maximum of 1/3 of the Common Fund ($198,333.33) as attorneys' fees, in addition to $5,000.00 in costs. Defendant will not oppose the Motion.

## 5. COMMON FUND SETTLEMENT PAYMENTS

### 5.1 Settlement Payments

i. Defendant agrees to pay up to the Common Fund amount to satisfy the potential claims of the Class Members, the Administration Costs, and any claim for attorneys' fees and costs. Defendant will not be required to pay more than this amount under any circumstances, with the exception of Defendant's payment of Employer Payroll Taxes. Defendant also will only be required to pay those Participating Class Members who are those who timely submit valid claims forms, so that there will be no reverter. Meaning that Defendant will make payments to those who participate only, so there is the potential for the actual total payout on the Common Fund to be less than $595,000.00, and payout of the Net Fund to be less than $366,666.67, depending on the level of participation by the Participating Class Members.

ii. Within fourteen (14) days of the Court's issuance of an Order granting Plaintiffs' Counsel's Motion for Attorneys' Fees and Costs relating to the Common Fund, Defendant shall wire to the Settlement Administrator the amount of each Participating Class Member's Portion of the Net Fund as calculated in paragraph 5.2 below, , the Attorneys' Fees and Costs amount that is approved by the Court, and the Settlement Administrator's Fees and Costs. These funds will be held in the QSF.

iii. Within thirty-five (35) days of the date of the Court's issuance of an Order granting Plaintiffs' Counsel's Motion for Attorneys' Fees and Costs, the Settlement Administrator will begin distributing the money in the QSF by making the following payments:

   (a) Paying Plaintiffs' Counsel's Court-approved attorneys' fees and costs;

   (b) Paying the costs of the Settlement Administrator; and

   (c) Mailing Individual Settlement Checks to all Participating Class Members who submitted properly completed Claim Forms on or before the Bar Date.

Individual Settlement Checks shall become void after ninety (90) days after the initial mailing.

### 5.2 Calculation of Individual Settlement Amounts.

i. The Individual Settlement Amounts will be paid from the Net Fund to only those Class Members who participate, so there is a possibility that the actual payments by Defendant are less than the total potential maximum Net Fund amount of $366,666.67 based on full participation. The Individual Settlement Amount for each Class Member shall be determined as follows.

    (a)  Each Class Member shall be assigned one (1) point for each week he/she was employed as a salaried, exempt-classified Store Manager in a 2 FTE store during the Class Period. The calculation of all workweeks pursuant to this paragraph shall be based on Russell Cellular's business records.

    (b)  To calculate each Class Member's Individual Settlement Amount:

        1.  Add all points together for all of the potential 217 Class Members, to obtain the "Total Denominator;"

        2.  Divide the number of points for each of the potential 217 Class Members by the Total Denominator to obtain each Class Member's "Portion of the Net Fund."

        3.  Multiply each Class Member's Portion of the Net Fund by the Net Fund to determine each Class Member's Individual Settlement Amount. Only Participating Class Members who submit a Claim Form by the Bar Date shall be entitled to receive their respective Individual Settlement Amount, and those amounts will be paid by Defendant. Any Class Members who do not participate will not be paid their respective amounts by Defendant, and will not release any claims under this Agreement.

ii.  Payroll Tax Responsibility and Tax Characterization of Payments.

    (a)  For tax purposes, 50% of the payments to Class Members pursuant to this Agreement shall be treated as back wages and 50% of such payment shall be treated as interest, any applicable penalties, liquidated damages, and other non-wage relief.

    (b)  Russell Cellular shall pay the Employer Payroll Taxes on the back wages payments in addition to the Common Fund.

    (c)  Payments treated as back wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2. Payments treated as interest, penalties, liquidated damages, and other non-wage relief shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number on an IRS Form 1099. The Settlement Administrator shall be responsible for determining the appropriate number of exemptions to be used in calculating payroll tax and withholding, deciding the appropriate tax rate, issuing the

Settlement Checks and issuing IRS Forms W-2 and Form 1099. Payments of attorneys' fees and costs shall be made without withholding, and be reported to the IRS and to Plaintiffs' Counsel under the payee's name and taxpayer identification number, which Plaintiffs' Counsel shall provide for this purpose, on an IRS Form 1099.

(d) The employee portion of all applicable income and payroll taxes will be the sole responsibility of the individual Class Member receiving an Individual Settlement Check, except that normal withholdings will be made from the W-2 portion of the Settlement Checks. The Parties make no representations, and it is understood and agreed that the Parties have made no representations, as to the taxability of any portions of the settlement payments to any Class Members, the payment of any costs or award of attorneys' fees, or any payments to the Named Plaintiff. Neither Plaintiffs' Counsel nor Defendant's Counsel intends anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor will it be relied upon as such.

### 5.3 Settlement Amounts Payable as Attorneys' Fees and Costs.

i. Plaintiffs' Counsel may ask the Court to approve payment of up to a maximum of one-third of the Common Fund ($198,333.33) as an award of attorneys' fees. Plaintiffs' Counsel may also seek reimbursement of reasonable actual case-related costs and expenses from the Common Fund, not to exceed Five Thousand Dollars ($5,000.00).

ii. The substance of Plaintiffs' Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the Settlement and this Agreement. The outcome of any proceeding related to Plaintiffs' Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Approval Motion. In the event that the Court (or any appellate court) awards less than the requested Plaintiffs' attorneys' fees and costs amounts, only the awarded amounts shall be paid by Defendant and shall constitute full satisfaction of the obligations of this Section and full payment hereunder.

### 5.4 Termination of Agreement.

i. If the Court rejects the Settlement and/or this Agreement, fails to approve and enter a Preliminary Approval Order in substantially the form submitted by the Parties, or fails to grant final approval, unless the Parties agree in writing, this Agreement shall be void *ab initio* except as to the provisions

expressly stated in this Agreement to survive, and Defendant shall have no obligations to make any payments under the Settlement or this Agreement.

ii. A decision of the Court declining to approve or altering any material condition of this Agreement, which effects a fundamental change of the Parties' agreement (except as to any reductions in attorneys' fees and costs as provided in Paragraph 5.3), or requiring that Defendant pay any amount in excess of the Common Fund, shall render the entire Settlement voidable and unenforceable as to all Parties herein at the option of either Party, except as to the provisions expressly stated in this Agreement as surviving. Each party may exercise its option to void this Settlement by giving notice, in writing, to the other and to the Court within thirty (30) days of the Court's Order disapproving or altering of any material condition, or thirty (30) days after an order denying a motion for reconsideration or motion for approval of amended settlement terms.

iii. Unless the parties agree in writing otherwise, in the event that the Agreement is not approved by the Court or the Settlement set forth in the Settlement Agreement is revoked, terminated, cancelled, declared void or fails to become effective in accordance with its terms, or if there is no Approval Order, the Parties will proceed at that time as if no Agreement had been entered. In such event, the terms and provisions of the Agreement, and the approval of any settlement class for purposes of implementing this Settlement, shall have no further force and effect with respect to the Parties and shall not be used in this Litigation or in any other proceeding for any purpose, including, but not limited to as evidence, except as to the provisions expressly stated in this Agreement as surviving, and any Judgment or order entered by the Court in accordance with the terms of the Agreement (including without limitation any order certifying the case or any part of the case as a class or collective action for settlement purposes) shall be treated as vacated, *nunc pro tunc*.

5.5 Release by Participating Class Members: Conditioned upon the Court's entry of the Approval Order, and in exchange for the monetary consideration recited in this Agreement, and subject to Paragraph 5.6 below, and as set forth more fully in the Claim Form, all Participating Class Members shall release Releasees from any and all overtime claims under the FLSA or any state wage laws, including related claims for penalties, interest, liquidated damages, attorneys' fees, costs and expenses that accrued during the time they were employed as salaried, exempt-classified Store Managers between January 31, 2016 and July 10, 2017.

5.6 Notwithstanding the above, any Class Member who does not submit a timely and properly completed Claim Form to become a Participating Class Member and receive his or her Individual Settlement Amount will not be bound by any release of claims.

5.7 General Release by Named Plaintiffs: Named Plaintiffs additionally waive, release and discharge Releasees from all demands, claims and actions, whether known or unknown,

relating to their employment or termination of employment with Defendant, through the date the respective Named Plaintiff signs this Agreement; provided, however, that Named Plaintiffs do not waive the right to file a charge or complaint with any administrative agency but do waive any right to recover any damages or other personal relief based on any demand, claim or action waived in this Paragraph brought on their own behalf or by any third party, including as a member of any collective or class action. Named Plaintiffs are not waiving any rights that they may have to: (a) their own vested accrued employee benefits under Defendant's health, welfare, or retirement benefit plans as of their termination date; (b) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (c) pursue claims which by law cannot be waived by signing this Agreement; and/or (d) enforce this Agreement. Nothing in this Agreement prohibits or prevents the Named Plaintiffs from filing a charge with or participating, testifying, or assisting in any investigation, hearing, whistleblower proceeding or other proceeding before any federal, state, or local government agency (e.g. EEOC, NLRB, SEC., etc.). However, to the maximum extent permitted by law, the Named Plaintiffs agree that if such an administrative claim is made, they shall not be entitled to recover any individual monetary relief or other individual remedies.

## 6. PARTIES' AUTHORITY

6.1 The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and to bind the Parties hereto to the terms and conditions hereof.

## 7. MUTUAL COOPERATION

7.1 The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of this Agreement. The Parties to this Agreement shall use their commercially reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein. As soon as practicable after execution of this Agreement, and in accordance with its terms, Plaintiffs' Counsel shall, with the assistance and cooperation of Defendant and its counsel, take all necessary steps to secure the Court's approval of this Agreement.

## 8. NOTICES

8.1 Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

To Plaintiffs and/or Class Members:

   Gregg I. Shavitz, Esq.

    Camar R. Jones, Esq.
    Shavitz Law Group, P.A.
    951 Yamato Road
    Suite 285
    Boca Raton, FL 33431
    (561)447-8888
    (561)447-8831 (facsimile)
    gshavitz@shavitzlaw.com
    cjones@shavitzlaw.com

To Defendant:

    Brian Rubenstein, Esq.
    Eric B. Moody, Esq.
    Mark D. Tinker, Esq.
    Cole Scott & Kissane, P.A.
    4301 W. Boy Scout Blvd.
    Suite 400
    Tampa, Florida 33607
    (813)864-9324
    (813)286-2900(facsimile)
    Brian.Rubenstein@csklegal.com
    Eric.Moody@csklegal.com
    Mark.Tinker@csklegal.com

## 9. NO ADMISSION OF LIABILITY

9.1 Defendant denies all of the allegations made by Named Plaintiffs and denies that it is liable or owes damages to anyone with respect to the alleged facts, including but not limited to the causes of action asserted in the Litigation. Nothing herein will be deemed or used as an admission that a class or collective action should be conditionally or finally certified. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendant has agreed to settle the litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation.

## 10. INTERPRETATION AND ENFORCEMENT/MISCELLANEOUS TERMS

10.1 Further Acts. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement. Plaintiffs' counsel shall be responsible for preparing all court filings necessary to obtain court approval of the settlement, subject to the review and approval of Defendant's counsel.

10.2 No Assignment. Named Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any

portion thereof or interest therein, including, but not limited to, any interest in the litigation, or any related action, and any attempt to do so shall be of no force or effect.

10.3 Binding Effect. This Agreement shall be binding upon the Parties and, with respect to Defendant, its affiliates, parents, subsidiaries, predecessors, successors, employees and agents; and, with respect to Named Plaintiffs, their spouses, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

10.4 Arms' Length Transaction; Materiality of Terms. The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated. Plaintiffs acknowledge that they are represented by, and have consulted with, legal counsel in connection with this Agreement.

10.5 Captions. The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

10.6 Construction. The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

10.7 Continuing Jurisdiction. The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

10.8 Counterparts. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same original instrument.

10.9 Governing Law. This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Florida, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

10.10 Waivers, etc. to Be in Writing. No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification or amendment, with any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

10.11 This Agreement constitutes the entire Agreement between the parties as to the subject matter contained herein and supersedes all prior discussions, negotiations, and Agreements whether oral or written. Any amendment to this Agreement, including oral modification supported by new consideration, must be reduced to writing and signed by both parties before it will be effective.

10.12 Electronic, Facsimile and E-mail Signatures. Any party may execute this Agreement electronically or by personally signing on the designated signature block below and transmitting that signature page *via* facsimile or e-mail to counsel for the other party. Any electronic signature or signature made and transmitted by facsimile or e-mail for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or e-mail.

**WE AGREE TO THESE TERMS.**

DATED:  **RUSSELL CELLULAR, INC.**

August 9, 2021  _____
Robert Lister, CFO

DATED:  **JENNY POBLANO**

August __, 2021  _____

DATED:  **NATHAN BARTLETT**

August __, 2021  _____

**10.10** Waivers, etc. to Be in Writing.  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification or amendment, with any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**10.11** This Agreement constitutes the entire Agreement between the parties as to the subject matter contained herein and supersedes all prior discussions, negotiations, and Agreements whether oral or written. Any amendment to this Agreement, including oral modification supported by new consideration, must be reduced to writing and signed by both parties before it will be effective.

**10.12** Electronic, Facsimile and E-mail Signatures.  Any party may execute this Agreement electronically or by personally signing on the designated signature block below and transmitting that signature page *via* facsimile or e-mail to counsel for the other party.  Any electronic signature or signature made and transmitted by facsimile or e-mail for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or e-mail.

**WE AGREE TO THESE TERMS.**

DATED:                                **RUSSELL CELLULAR, INC**.

August 9, 2021                    _____
                                               Robert Lister, CFO


DATED:                                **JENNY POBLANO**

August __, 2021                   _____


DATED:                                **NATHAN BARTLETT**

August 09, 2021                   _____

**10.10** Waivers, etc. to Be in Writing.  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification or amendment, with any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**10.11** This Agreement constitutes the entire Agreement between the parties as to the subject matter contained herein and supersedes all prior discussions, negotiations, and Agreements whether oral or written. Any amendment to this Agreement, including oral modification supported by new consideration, must be reduced to writing and signed by both parties before it will be effective.

**10.12** Electronic, Facsimile and E-mail Signatures.  Any party may execute this Agreement electronically or by personally signing on the designated signature block below and transmitting that signature page *via* facsimile or e-mail to counsel for the other party.  Any electronic signature or signature made and transmitted by facsimile or e-mail for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or e-mail.

**WE AGREE TO THESE TERMS.**

DATED:  **RUSSELL CELLULAR, INC**.

August 9, 2021   _____

Robert Lister, CFO

DATED:  **JENNY POBLANO**

August 09, 2021   _____

DATED:  **NATHAN BARTLETT**

August __, 2021   _____

Page **13** of **14**

# A

# (Proposed Notice)

# NOTICE OF RUSSELL CELLULAR, INC. STORE MANAGER UNPAID OVERTIME SETTLEMENT

[NAME]
[ADDRESS]
[CITY, STATE ZIP]

---

**Russell Cellular, Inc.'s records indicate that you worked as a salaried Store Manager and did not supervise the equivalent of two full-time employees each week between June 11, 2016 and July 10, 2017, and thus you are entitled to a payment from this settlement.**

*A Court authorized this notice.  This is not a solicitation from a lawyer.*

Store Managers have sued Russell Cellular alleging that Russell Cellular violated the law by mis-classifying as exempt from overtime Store Managers who supervised less than the equivalent of 2 full time employees each work week (i.e. less than 80 hours of associate labor per week). As such, these Store Managers allege that they should have received overtime pay when they worked over 40 hours in a workweek.

Russell Cellular denies that any laws were violated or that any additional payments are owed. However, in an effort to amicably resolve this dispute, Russell Cellular and the Store Managers reached a settlement of these claims and the Court has preliminarily approved the settlement. You are eligible to participate in this settlement by submitting the enclosed claim form by [insert date 60 days from notice mailing].  The settlement allocation formula takes into account the number of workweeks you worked as a Store Manager between January 31, 2016 thru July 20, 2017, and is a compromise because at all times Russell Cellular has denied these allegations and maintains that no overtime wages are due and owing.

    A.  **WHAT DOES THE SETTLEMENT PROVIDE?**

To settle the lawsuit, Russell Cellular will establish a common fund in the amount of $595,000.00 ("the Settlement Amount").  The following sums will be paid from the Settlement Amount, subject to Court approval:  (a) all Individual Settlement Payments to Participating Store Managers, (b) a maximum of $198,333.33 in attorney's fees, (c) attorney's expenses (not to exceed $5,000.00), and (d) the Settlement Administration Costs (not to exceed $25,000.00).

If you timely submit the Claim Form, your minimum estimated gross settlement share is $_____.

    B.  **WHAT ARE YOU GIVING UP IN EXCHANGE FOR RECEIVING A PAYMENT FROM THE SETTLEMENT?**

In exchange for the settlement payment, you will release state and federal unpaid overtime claims against Russell Cellular between January 31, 2016 and July 10, 2017.

    C.  **YOUR OPTIONS IN THIS SETTLEMENT.**

1

| Receive a Payment | In order to participate in the settlement, and receive a payment, you must timely complete, sign, and return the enclosed Consent to Join and Claim Form to the Settlement Administrator at the address listed below by mail, facsimile, email or thru the case website no later than [60 DAYS AFTER THE DATE NOTICE WAS SENT]. **See Section D below on how to make a claim.** |
|---|---|
| Do Nothing | If you do not want to receive a settlement payment, then do not submit the Claim Form, but you will be unable to late make such a claim for damages as the statute of limitations will have run. |

D.  **HOW DO I MAKE A CLAIM?**

The **Settlement Administrator** – to whom all Claim Forms must be sent on or before [60 days after Notice sent is]:

**Russell Cellular Store Manager Overtime Settlement**
<ADDRESS>
<PHONE>
<FAX>
<E-MAIL>

You may also submit your Claim Form via the case website, which can be found at [INSERT WEBSITE]. If you timely return the enclosed Claim Form the settlement administrator will mail you your payment after the Court enters a Final Order approving the settlement.

E.  **DO I HAVE A LAWYER IN THIS CASE?**

The Court has decided that the lawyers at Shavitz Law Group, P.A. are qualified to represent you and all Store Managers who participate in the settlement. Their fee is paid from the settlement fund and you do not owe them any money for their services. Plaintiffs' counsels' contact information is below and you may contact the Store Managers' counsel with any questions:

> Gregg I. Shavitz, Esq.
> Camar Jones, Esq.
> Shavitz Law Group, P.A.
> 951 Yamato Road, Suite 285
> Boca Raton, FL 33431
> (561) 447-8888
> info@shavitzlaw.com
> www.shavitzlaw.com

F.  **CAN RUSSELL CELLULAR AND/OR MY CURRENT EMPLOYER RETALIATE AGAINST ME IF I PARTICIPATE IN THE SETTLEMENT?**

It is a violation of federal law for any Russell Cellular to fire, discipline, or retaliate against you in any manner for taking part in this case.

2

# B

# (Proposed Claim Form)

**United States District Court, Middle District of Florida**
**Case No. 8:19-cv-00265**

<<Class Member Name>>
<<Street Address>>
<<City, State Zip>>

## CONSENT TO JOIN SETTLEMENT, RELEASE, AND CLAIM FORM

DEADLINE: To receive your settlement payment, you must complete, sign, and return this Claim Form. Your Claim Form must be postmarked or otherwise received by mail, facsimile, email and web submission by [insert date]].

**Russell Cellular Store Manager Overtime Pay Settlement**
Address
City, State Zip
Phone: (___) ___-____
Facsimile: (___) ___-____
E-mail:_____

**CONSENT TO JOIN & AGREEMENT TO BE BOUND TO RELEASE:** I agree to be bound by the collective action settlement and release approved by the Court, which will release any claim I have for unpaid overtime wages which accrued when I was employed as a Store Manager between January 31, 2016 and July 10, 2017. I hereby designate the Shavitz Law Group, P.A. to represent me in this action.

Signature: _____   Date: _____

Print:_____
            First           Middle           Last

Former (Maiden) Names worked under, if any:_____

> **Note: Your address and other identifying information will be kept confidential and will not be filed with the Court.**

_____
Street Address

_____
City                          State        Zip Code

Email Address: _____

Home phone: _____   Cell phone: _____