## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**JENNY POBLANO and NATHAN
BARTLETT, individually and on behalf
of all others similarly situated,**

     **Plaintiffs,**

**v.**                           **Case No.: 8:19-cv-00265-KKM-AAS**


**RUSSELL CELLULAR, INC.,
a foreign Corporation,**

     **Defendant.**

_____/

## REPORT AND RECOMMENDATION

The parties jointly move for the court to preliminarily approve their proposed settlement agreement and to permit issuance of settlement notice to collective members to allow them to opt-in to the settlement and claim their respective shares of a common fun created as part of the settlement. (Doc. 115). The undersigned held a hearing on the parties' motion. (Doc. 119). The undersigned further ordered the parties to submit a revised notice (Doc. 118) and the parties complied (Doc. 120-1). Based on the information provided in the joint motion and at the December 7th hearing and upon review of the revised notice (Doc. 120-1), it is recommended that the motion be **GRANTED**.

## I.    BACKGROUND

Plaintiffs Jenny Poblano and Nathan Bartlett (the named plaintiffs) sued Defendant Russell Cellular, Inc., for claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* (FLSA). (Doc. 1). The named plaintiffs were employed by the defendant as salaried, exempt-classified store managers at the defendant's wireless stores. (*Id.*). The named plaintiffs alleged despite their "manager" characterization, they and other similarly situated store managers were misclassified as exempt and were not paid for hours over forty hours per workweek in violation of the FLSA. (*Id.*). Twenty-one other individuals (opt-in plaintiffs) opted into this case after learning of the case via word of mouth.

In its answer, the defendant denied the named plaintiffs' allegations, raised various defenses, and contended that store managers were properly classified as exempt and compensated for time worked. (Doc. 19). The defendant asserted the named plaintiffs and other store managers were exempt under the administrative or executive exemptions and did not have to be paid overtime compensation if they worked over forty hours in a workweek. (*Id.*).

Through the course of litigation, the parties investigated the merits of their respective claims and defenses. The named plaintiffs responded to the

2

court's interrogatories (*See* Doc. 15), after which the defendant provided the named plaintiffs' time and compensation records (*See* Doc. 6, p. 2). The parties attended an unsuccessful mediation but continued to discuss settlement. (*See* Doc. 30).

The named plaintiffs moved for conditional collective action certification, requesting an order permitting court-supervised notice be provided to all salaried, exempt-classified store managers who worked for the defendant at any store location in the United States within the three years before the motion for conditional certification. (Doc. 37). The defendant opposed the motion. (Doc. 58). While the motion for conditional certification was pending, the defendant served offers of judgment on the twenty-one opt-in plaintiffs. (Docs. 46–57). Each opt-in plaintiff accepted the offer of judgment and received full payment plus liquidated damages. (Docs. 84–92, 94).

Also, prior to the court's resolution of the named plaintiff's motion for conditional certification, the parties' entered a Settlement Agreement and moved for settlement approval. (Doc. 95). The court denied the motion without prejudice due to concerns about perceived mathematical errors in the settlement documents and the settlement agreement's reversion clause, which provides that amounts remaining in the settlement fund will revert to the defendant. (Docs. 96). The court gave the parties fourteen days to file an

3

amended settlement agreement and advise the court whether the parties would be amenable to the appointment of a *cy pres* recipient to receive the unclaimed portions of the settlement fund. (*Id.* at p. 2). The parties filed a joint notice indicating that there were no mathematical errors in the settlement papers (Doc. 97 at p. 2) and that the defendant would not appoint a *cy pres* recipient to receive the unclaimed portions of the settlement fund because (at that time) collective members who did not opt in could still make claims against the defendant (*Id.* at p. 5). The court then denied the parties request for settlement approval because the action had not been conditionally certified, potential opt-in plaintiffs had not received adequate notice, and the parties had not requested preliminary settlement approval. (Doc. 101).

The parties moved for preliminary settlement approval. (Doc. 107). The court again denied the motion without prejudice because the parties' proposed settlement agreement included a service-awards provision not clearly severable from the agreement. (Doc. 111, p. 3). The court also noted that it remains unclear in the proposed settlement where the remaining fund monies will revert after all potential plaintiffs file claims. (*Id.* at p. 4).

The parties now renew their motion for preliminary settlement approval. (Doc. 115). The parties stipulated, for settlement purposes, to conditional

certification of a collective action comprised of the remaining 217[1] store managers employed by the defendant between January 31, 2016 and July 10, 2017,[2] who supervised less than the equivalent of two full-time employees. (*See* Doc. 106). Under the Settlement Agreement, notice would be sent to these 217 collective members allowing them the opportunity to opt-in to the settlement and claim their respective shares of the common fund created as part of the settlement. (Doc. 115-1, pp. 4–5). Each notice will be individualized to the recipient collective member and will include the calculated anticipated award amount based on how many weeks and hours the defendant's records show that recipient worked (subject to challenge by the collective member). The parties request that the court permit issuance of the settlement notice to the 217 members of the collective action and for preliminary approval of the Settlement Agreement. (Doc. 115).

The undersigned held a hearing on the parties' joint amended motion for preliminary settlement approval. (Doc. 119). At the hearing, the court clarified certain settlement agreement terms and ordered the parties to file a revised

---

[1] The remaining 217 store managers include the named plaintiffs (Ms. Poblano and Mr. Bartlett), but exclude the 21 opt-in plaintiffs because the defendant already paid those 21 opt-in plaintiffs consistent with each accepted offer of judgment.

[2] After July 10, 2017, store managers who supervised less than two full-time employees were reclassified to hourly, nonexempt employees.

settlement notice. (Doc. 118). Counsel explained they anticipate a high claims rate for the remaining 217 members of the collective action. They anticipate a high claims rate because 21 store managers already joined the collective action after only hearing about this action via word of mouth. Almost all, if not all, of the 21 opt-in store managers disputed the defendant's records of their hours and demanded more than what the defendant thought it owed to compensate them. Nevertheless, the defendant's offers of judgment to those 21 opt-in store managers made them whole for the hours those store managers indicated they worked (i.e., for more hours than the defendant's records reflected). Because all or almost all of the twenty-one opt-in plaintiffs claimed a higher amount, counsel stated it is likely most of other 217 members of the collective action will as well. To manage this expectation, the parties negotiated a settlement fund that is larger than what would be necessary to compensate the 217 members based on the defendant's records. The plaintiffs' counsel also confirmed his firm maintains detailed billing records of time spent on this collection action and can provide those records to support their anticipated request for a portion of the settlement fund to pay attorney's fees.

The undersigned ordered the parties to submit a revised settlement notice that better clarifies the estimated individualized settlement share calculated therein is the minimum amount of compensation the recipient will

receive and is based on the defendant's payroll records the allocation formula in the settlement agreement. In addition, counsel was directed to correct a scrivener's error in the settlement notice. (*See* Doc. 118). The parties made the necessary edits to the settlement notice. (*See* Doc. 120-1).

## II.   SETTLEMENT AGREEMENT

Under the Settlement Agreement,

Defendant agrees to pay up to the Common Fund amount[3] to satisfy the potential claims of Class Members, the Administrative Costs,[4] and any claim for attorneys' fees and costs. Defendant will not be required to pay more than this amount under any circumstances, with the exception to Defendant's payment of Employer Payroll Taxes. Defendant will also be required to pay those Participating Class Members who are those who timely submitted claims forms, so that there will be no reverter. Meaning that Defendant will make payments to those who participate only, so there is the potential for the actual total payout of the Common Fund to be less than $595,000.00, and payout of the Net Fund[5] to

---

[3] The common fund of $595,000.00 is "the maximum potential amount to be paid to settle Class Members' wage claims, including any claim for attorneys' fees and costs approved by the Court; any and all amounts to be paid to Class Members; and the Settlement Administration." (Doc. 115-1, p. 2).

[4] The parties retained Rust Consulting, Inc. as the Settlement Administrator.

[5] The net fund is $366,666.67. (Doc. 115-1, p. 3). This amount was determined by deducting from the common fund payments for: "(1) Settlement Administrator Costs not to exceed $25,000.00; (2) maximum potential Court-approved attorneys' fees for Plaintiffs' Counsel related to Participating Class Members in the settlement ($198,333.33); and (c) [sic] Plaintiffs' Counsel's costs and expenses, not to exceed Five $5,000.00. The Net Fund amount shall not be impacted by the amount ultimately awarded for Plaintiff's attorneys' fees, as the Net Fund will remain equal to $366,666.67, even if the Court decides to award less than the maximum amount requested by Plaintiffs' Counsel for their attorney's fees." (*Id.* at n. 1).

be less than $366,666.67, depending on the level of participation by the Participating Class Members.

(Doc. 115-1, p. 6).

Each collective member's estimated proportionate share of the common fund will be determined by the Settlement Administrator based on the allocation formula of the number of workweeks each collective member was employed in a two full-time employee store during the relevant period. (Doc. 115-1, pp. 6–7). Each collective member will receive the same amount for each week worked as a salaried, exempt-classified store manager and supervised less than the equivalent of two full-time employees during the relevant period.[6] (*Id.*). By participating in the settlement, participating collective members waive, release, and forever discharge the defendant of any overtime claims under the FLSA or any state wage laws. (*Id.* at pp. pp. 9–10).

---

[6] Although there are time records establishing the hours each collective member worked, the common fund is greater than the total amount of damages from the collective members' time records. The time records reflected that the collective members were owed $111,748.43 in alleged overtime wages during the relevant period. With liquidated damages, that amount doubled to $223,496.86. The parties counsel explained at the December 7th hearing that the expectation is that a high percentage of the collective members will make claims (based on the fact that 21 previously opted in without formal notice of the action and only by learning of the action via word of mouth) and those who make claims will likely claim (and then be paid) more owed overtime wages than what the defendant's records reflect.

## III.   SETTLEMENT NOTICE

Before approving an FLSA settlement, particularly in a collective action, the court must authorize notice of the settlement to the collective members. This notice serves an important function because it protects a collective member's right to object before being bound by the settlement terms. *See Mosley v. Lozano Ins. Adjusters, Inc.*, No. 3:19-CV-379-J-32JRK, 2020 WL 3978055, at *2 (M.D. Fla. June 23, 2020).

The Settlement Agreement provides that within twenty days of the entry of an order granting preliminary approval of the settlement, the defendant will provide the settlement administrator a list containing all the collective members' names, dates of employment as salaried, exempt-classified store managers in two full-time employee stores, last known addresses and email addresses, and social security numbers (the list). Within twenty days of the date the settlement administrator receives the list, the settlement administrator will distribute the Settlement Notices to the collective members (including the named plaintiffs) via First Class United States mail and electronic mail. Collective members will have sixty days from the distribution of the Settlement Notices (the bar date) to submit a claim form. A collective member may submit the claim form by U.S. mail, electronic mail, or facsimile. And the settlement administrator will create a website where a collective

9

member may submit the claims form online. To ensure collective members receive their Settlement Notices, if a Settlement Notice is returned because it is undeliverable without a forwarding address, the settlement administrator will perform up to two skip traces for each such returned notice and, if an updated address is found, the settlement administrator will send the Settlement Notice to the updated address and the collective member will have until the later of: (a) fifteen days from any re-mailing of the Settlement Notice; and (b) the bar date. Further, thirty days before the bar date, the settlement administrator will send reminder notice via United States Mail and email to collective members who have not returned claim forms.

The undersigned's review of the revised Settlement Notice reveals it informs each collective member of the Settlement Agreement's terms, the individualized specific estimated amount the recipient will receive, the basis for the estimated settlement payment, the scope of the release, and the right to object to the settlement. (*See* Doc. 115-1, Ex. A).

The undersigned recommends the Settlement Notice be approved for issuance to the collective members.

## IV.   PRELIMINARY APPROVAL OF FLSA SETTLEMENT

In an FLSA case for "back wage[s] or liquidated damage[s]," the court must make a finding that any compromise settlement represents "a fair and

reasonable resolution of a bona fide dispute over FLSA provisions" after "scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. U.S. ex rel. U.S. Dept. of Labor*, 679 F.2d 1350, 1353, 1355 (11th Cir. 1982); *see also Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1306 (11th Cir. 2013) (citation omitted); *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009).

The Settlement Agreement is fair because it is a reasonable resolution of a bona fide dispute about the collective members' unpaid wages, reached after months of negotiations. The defendant raised defenses to the named plaintiffs' willfulness allegations and argued store managers were the highest-ranking employees in the stores and managed the stores as their primary duty, which is exempt work under the executive and administrative exemptions. The named plaintiffs argued that the store managers' primary duties were non-exempt, and included such duties as selling phones, stocking, helping customers, troubleshooting phones, cleaning, and cold calling potential customers. In contrast, the defendant claims the store managers' duties included hiring, firing, interviewing, and handling personnel matters. This matter would likely need to be resolved by a jury, making continued litigation expensive and lengthy, with no certainty of success on the merits.

In addition, at the time of settlement, the named plaintiffs' motion for conditional certification was pending. The defendant argues the named

11

plaintiffs would not obtain conditional certification because the store managers worked in different locations under different supervisors, performed different primary duties, and were paid under different compensation plans. Even if the named plaintiffs obtained conditional certification, the defendant intended to request decertification. If obtained, the collective members would have to bring their claims individually, making potential recovery of unpaid wages challenging, costly, and time-consuming.

Despite these risks, the parties settled this action. The parties' Settlement Agreement compensates the collective members (including the named plaintiffs) for all their alleged overtime and liquidated damages.[7] Thus, there are legitimate reasons for the compromise, and the undersigned recommends that the court find the proposed settlement is fair and reasonable. *See Lynn's Food Stores*, 679 F.2d at 1355.

## V. CONCLUSION

It is **RECOMMENDED** that the Joint Motion to Authorize Settlement Notice[8] and for Preliminary Approval of Settlement Agreement (Doc. 115) be **GRANTED**.

---

[7] Of note, each collective member otherwise would also need to prove the defendant acted in bad faith to be awarded liquidated damages.

[8] This refers to the revised settlement notice. (*See* Doc. 120-1).

12

**ENTERED** in Tampa, Florida on December 15, 2021.

_Amanda Arnold Sansone_

AMANDA ARNOLD SANSONE
United States Magistrate Judge

## NOTICE TO PARTIES

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. A party's failure to object timely in accordance with 28 U.S.C. § 636(b)(1) waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions. 11th Cir. R. 3-1.